UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---

| | | |
|---|---|---|
| SAVE THE SOUND, INC. | : | CIVIL ACTION NO. |
| | : | 3:21-cv-00177 |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| GREATER NEW HAVEN WATER POLLUTION CONTROL AUTHORITY | : | |
| | : | |
| | : | February 10, 2021 |
| Defendant | : | |
| | : | |

---

# COMPLAINT

## NATURE OF THE ACTION

1. Plaintiff Save the Sound, Inc., brings this citizen suit pursuant to Section 505(a)(1) of the Clean Water Act ("the Act" or CWA), 33 U.S.C. § 1365(a)(1), against the Greater New Haven Water Pollution Control Authority (GNHWPCA) to address and abate its continuing violations of the Act, and to enjoin and abate common law nuisance that was caused and continues as a result of Defendant's unlawful discharges of pollution.

## JURISDICTION AND VENUE

2. Jurisdiction is conferred upon this court pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331.

3. On November 16, 2020, Plaintiff gave notice of the violations and Plaintiff's intent to file suit to the Connecticut Department of Energy and Environmental Protection (CT DEEP), the Administrator of the United States Environmental Protection Agency (EPA), the Regional

Administrator of EPA Region 1, and Defendant Greater New Haven Water Pollution Control Authority ("Defendant" or "GNHWPCA"), as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A).

4. More than sixty (60) days have passed since notice was served pursuant to Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A).

5. As of the date of the filing of this complaint, neither EPA nor CT DEEP has commenced or diligently prosecuted: (1) a court action to redress violations under Section 505(b)(1)(B) of the CWA, 33 U.S.C. § 1365(b)(1)(B); or (2) an administrative penalty action that would preempt this action pursuant to Section 309(g)(6)(A) of the CWA, 33 U.S.C. § 1319(g)(6)(A).

6. Venue is appropriate in this district pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the source of the violations is located therein.

**PARTIES**

7. Plaintiff Save the Sound, Inc., formerly known as Connecticut Fund for the Environment, was founded in 1978 to protect and improve the land, air, and water of Connecticut using advocacy and scientific expertise to achieve results that benefit our environment for current and future generations. Save the Sound seeks to protect, conserve and protect the environmental health and natural resources of the Long Island Sound. Save the Sound is a 501(c)(3) not-for-profit corporation, incorporated under the laws of the State of Connecticut, with its principal place of business at 900 Chapel Street, New Haven, CT 06510. Save the Sound represents more than 3,800 members in Connecticut and New York. Save the Sound has represented the interests of its membership in legal proceedings before trial and appellate courts and federal and state administrative agencies in various proceedings in which Save the Sound sought to protect the environment and natural resources for its members and the citizens of Connecticut.

8. Hereinafter, the plaintiff is referred to in this complaint as Save the Sound.

9. Save the Sound is a "citizen" for purposes of Section 505 of the CWA, 33 U.S.C. § 1365, and files this citizen suit on behalf of itself and its members.

10. Members of Save the Sound use the rivers and waterways of the state, including the Mill River and Long Island Sound and its beaches and embayments, for various recreational uses including, but not limited to, swimming, fishing, and boating, and for aesthetic enjoyment. The violations alleged herein cause or contribute to pollution in waters used and enjoyed by Save the Sound members, and are injurious to human health, wildlife, recreational, and commercial activities in or around these rivers and waterways and Long Island Sound, and other uses pursued and enjoyed by Save the Sound members. The violations alleged herein result in public health risks and negative impacts to waterways, threaten the health and welfare of Save the Sound members, impair and threaten their use and enjoyment of rivers and waterways of the state, Long Island Sound, and other waters, and deny them the level of water quality to which they are entitled under the Clean Water Act. Save the Sound members have an interest that is adversely affected by Defendant's illegal discharges, bypasses, and violations of the Clean Water Act.

11. Defendant GNHWPCA is an "association or other public body created by or pursuant to State law and having jurisdiction over disposal of sewage," a municipality within the meaning of Section 502(4) of the CWA, 33 U.S.C. § 1362(4), and is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

12. Defendant operates and maintains a sanitary sewer collection system ("Collection System") located in four constituent municipalities, New Haven, Hamden, East Haven, and Woodbridge, and operates the East Shore Water Pollution Abatement Facility pursuant to National Pollutant Discharge Elimination System (NPDES) Permit No. CT0100366.

## **FACTUAL ALLEGATIONS**

13. Long Island Sound is a unique estuary that has two connections to the sea and receives the flow of several major rivers that drain fresh water from New England and as far as the U.S. border with Quebec. The Sound provides feeding, breeding, nesting, and nursery areas for a diversity of plant and animal life, including 1200 species of invertebrates, 170 species of fish, and dozens of species of migratory birds. In 1987, Congress designated Long Island Sound as an Estuary of National Significance.

14. As a result of pollution, Long Island Sound is suffering from continued degradation in water quality, leading to low shellfish harvests and the closure of shellfish beds, depletion of fishing stocks and fish consumption advisories, periodic beach closures, restrictions on recreational activities, low dissolved oxygen (hypoxia), pathogen contamination, toxic contamination, and floatable debris, adversely impacting businesses, public health, recreation, and aesthetics.

15. The Mill River is a tributary to Long Island Sound running through Cheshire, Hamden, and New Haven, Connecticut before discharging into Long Island Sound.

16. The Mill River and Long Island Sound are the receiving water bodies for raw sewage from sanitary sewer pipes which are supposed to transport sanitary wastewater from homes, businesses, public toilet facilities, and other locations to wastewater treatment plants for removal of pollutants in order to make the wastewater safe for discharge into the environment. Sewage collection systems consist of sewer pipes, along with associated facilities including, pumping stations, power and other equipment, and wastewater treatment facilities. Sewage collection systems are generally owned and operated by municipalities or regional authorities comprised of several municipalities. Neglect of basic maintenance and failure to perform routine and

preventative maintenance of the various components of sewage collection systems allows the discharge of raw or partially treated sewage into streams and rivers, which ultimately discharge into Long Island Sound polluting and impairing the water quality of these streams, rivers, and Long Island Sound.

17. The Clean Water Act was enacted by Congress in 1972 and it, along with subsequent amendments, mandates that our nation's water bodies be made clean. For Long Island Sound, this means that the Sound must meet water quality standards that make it safe for fish, shellfish, humans, and all other species that live on it, in it, and near it.

18. In order to meet the mandate of the Clean Water Act, the entire sanitary sewer system, both the sewage treatment plants and the pipes that transport sanitary sewage effluent to the treatment plants, must be maintained and in good working order. In a well-maintained system only wastewater from homes and businesses would be transported through the sanitary sewer pipes for effective treatment at the sewage treatment plant, which would then discharge treated water into a receiving water body. Failure to perform routine and preventative maintenance of the pipes, manholes, and electrical and mechanical equipment in the wastewater collection system can result in discharges of raw and partially treated sewage at various locations in the wastewater collection and treatment system into receiving water bodies causing pollution and conditions detrimental to the public health and the environment. Systemic inspections are necessary to identify areas of concern and to prioritize monitoring, maintenance, and rehabilitation or replacement. Among the many issues that may result in the discharge of untreated wastewater from collection systems is hydrogen sulfide corrosion. Pipes may become compromised from the buildup of hydrogen sulfide, which can result in significant corrosion of pipes and ultimately structural collapses if not maintained or rehabilitated properly. Areas where

hydrogen sulfide corrosion is of concern can be identified through infrastructure specifications and on-site investigations.

## CLEAN WATER ACT STATUTORY SCHEME

19.     The CWA is a comprehensive statute designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." Section 101(a) of the CWA, 33 U.S.C. § 1251(a). To achieve that goal, Section 301(a) of the CWA, U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source into navigable waters of the United States except in compliance various enumerated sections of the CWA, including the terms and conditions of a National Pollutant Discharge Elimination System (NPDES) permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342. The term "pollutant" is defined in Section 502(6) of the CWA, 33 U.S.C. § 1362(6) to include "sewage." "Discharge of a pollutant" is defined in Section 502(12) of the CWA, 33 U.S.C. § 1362(12) as "any addition of any pollutant to navigable waters from any point source." Each violation of the permit and each discharge that is not authorized by the permit is a violation of the Clean Water Act.

20.     Under Section 402(a), (b) of the CWA, 33 U.S.C. § 1342(a), (b), the Administrator of the EPA has authorized the Connecticut Department of Energy and Environmental Protection to implement a permitting program in Connecticut, issuing NPDES permits for wastewater treatment facilities.

21.     The citizen suit provision of the CWA, Section 505(a)(1), 33 U.S.C. § 1365(a)(1), authorizes any citizen to commence a civil action against any person alleged to be in violation of "an effluent standard or limitation" or "an order issued by the Administrator or a State with respect to such a standard or limitation."

22. Such enforcement action under the Clean Water Act includes an action seeking remedies for an unpermitted discharge in violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311, as well as for violation of a condition of a permit issued pursuant to Sections 402 and 505(f) of the CWA, 33 U.S.C. § 1342, 1365(f).  As set forth in this Complaint, Defendant is causing unpermitted discharges and is in violation of NPDES permit conditions.

23. Declaratory relief in this case is authorized by 28 U.S.C. § 2201-02 (power to issue declaratory relief in case of actual controversy and further necessary relief based on such a declaration).

24. Injunctive relief is authorized by section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a).

25. Violators of the CWA are also subject to an assessment of civil penalties for up to $56,460 per day per violation for violations occurring after November 2, 2015 when penalties are assessed after December 23, 2020, 33 U.S.C. §§ 1319(d) and 1365(a) and 40 C.F.R. §§ 19.1-19.4.

**FIRST CLAIM FOR RELIEF**
**UNAUTHORIZED DISCHARGES**

26. Paragraphs 1 through 25 are incorporated herein by reference.

27. The citizen suit provision of the CWA, Section 505(a)(1), 33 U.S.C. § 1365(a)(1), authorizes any citizen to commence a civil action against any person alleged to be in violation of "an effluent standard or limitation." Section 505(f)(1) defines "an effluent standard or limitation" to include "an unlawful act under subsection (a) of section 1311 of this title." 33 U.S.C. § 1365(f)(1).

28.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), provides that the "discharge of any pollutant" by any "person" is unlawful, unless the discharge complies with various enumerated sections of the Act. Among other things, Section 301(a) prohibits discharges not authorized by a valid permit issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

29.     Section 502(12) of the Clean Water Act, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

30.     Section 502(6) of the Clean Water Act, 33 U.S.C. § 1362(6), defines "pollutant" to include, among other things, chemical wastes, biological materials, rock, sand, and industrial waste discharged into water.

31.     Section 502(14) of the Clean Water Act, 33 U.S.C. § 1362(14) defines "point source" broadly to include "any discernable, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."

32.     Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including territorial seas." Long Island Sound, and the rivers, streams, bays, and other waters that flow into it are navigable waters of the United States.

33.     The Defendant has discharged untreated wastewater to navigable waters through point sources within its wastewater Collection System.

34.     On July 6, 2020 through July 7, 2020, the Defendant discharged approximately 2.1 million gallons of untreated wastewater to the Mill River in Hamden, Connecticut, from a failed

pipe in the Whitney Avenue Pressure Sewer. This discharge was not authorized by the Defendant's NPDES permit.

35. The Defendant's NPDES Permit only authorizes the discharge of treated wastewater through outfall 001-1 at the East Shore Water Pollution Abatement Facility, or untreated wastewater through specifically articulated combined sewer overflow outfall locations in Attachment 3 of the NPDES Permit. The Defendant "shall not at any time bypass the collection system or treatment facilities or any part thereof . . . ." NPDES Permit No. CT0100366, § 1(B); RCSA § 22a-430-3(k).

36. The discharge of these pollutants affects the public health and safety, the health of marine life, causes degradation of water quality, and adversely affects the aesthetic quality and enjoyment of Goodwives River, Stony Brook, and Long Island Sound.

37. As a result of these unauthorized discharges, Defendant is in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), for each day that it discharged untreated wastewater through point sources not authorized by a permit.

38. The July 6-7, 2020 sewage spill was caused by hydrogen sulfide corrosion, which compromised the pipe and ultimately caused its failure. Evidence of hydrogen sulfide corrosion was identified in the Whitney Avenue Pressure Sewer as early as 2014 during investigations conducted for the development of a Standard Operating Procedure (SOP). Based upon information and belief, the last known monitoring of the Whitney Avenue Pressure Sewer occurred in 2015, despite the fact that the SOP recommended annual monitoring and inspections.

39. Based upon information and belief, Defendant does not have a routine inspection and cleaning program for large diameter pipes. There have been two contracts for large diameter cleaning and CCTV inspections in the last ten years, and the pipes included therein are unique

pipe segments with no or little repetition between contracts, indicating that there is no routine cycle for inspecting and cleaning all large diameter pipes that could result in significant sewage spills due to the large volume of effluent conveyed.

40. The Whitney Avenue Pressure Sewer is not included in the Hydrogen Sulfide Monitoring and Control Program ("H2S Program"), which includes proactive monitoring of sewers and manholes that may be compromised by hydrogen sulfide corrosion in the future and the implementation of rehabilitation and replacement projects for compromised infrastructure. The H2S Program was initially developed in 2011 and later revised in 2016. The criteria for inclusion in the inventory included consideration of areas where evidence of hydrogen sulfide corrosion have been identified since 2005. However, the revised inventory did not include the Whitney Avenue Pressure Sewer, despite the 2014 investigation that indicated evidence of hydrogen sulfide corrosion, nor was this sewer added to the program at any later date. The H2S Program is not sufficiently comprehensive in scope to prevent pipe failures caused by hydrogen sulfide corrosion.

41. Based upon the foregoing, Defendant's violations of the CWA are ongoing and continuous, and there is more than a reasonable likelihood of recurrence, including, but not limited to, untreated wastewater spills from large diameter pipes or hydrogen sulfide compromised pipes.

## SECOND CLAIM FOR RELIEF
## FAILURE TO COMPLY WITH NPDES PERMIT CONDITIONS

42. Paragraphs 1 through 41 are incorporated herein by reference.

43. The citizen suit provision of the CWA, Section 505(a)(1), 33 U.S.C. § 1365(a)(1), authorizes any citizen to commence a civil action against any person alleged to be in violation of

"an effluent standard or limitation." Section 505(f)(7) defines "an effluent standard or limitation" to include "a permit or condition of a permit issued under section 1342 of this title." 33 U.S.C. § 1365(f)(7).

44. Defendant has failed to comply with conditions of its NPDES Permit, No. CT0100366, issued pursuant to Section 402, 33 U.S.C. 1342.

45. Defendant's NPDES Permit includes General Provisions, Section 1, including compliance with RCSA Section 22a-430-3(k): "The permittee shall not at any time bypass the collection system or treatment facilities or any part thereof . . . ." As described herein, the July 6-7, 2020 discharge of untreated wastewater from the Whitney Avenue Pressure Sewer was in violation of this permit condition.

46. The General Provisions in Defendant's NPDES Permit also require compliance with RCSA Sections 22a-430-3(f) and (h), "Proper operation and maintenance" and "Duty to mitigate," respectively. The CWA implementing regulations require that these provisions be included in all NPDES permits, 40 C.F.R. §§ 122.41 (d), (e).

47. The Whitney Avenue Pressure Sewer SOP was developed and must be followed for compliance with these General Provisions: "The SOP has been developed to comply with the required operation and maintenance requirements including personnel qualification and training, health and safety requirements, maintenance procedures and recommended frequencies, and recordkeeping requirements." Arcadis, GNHWPCA, Final Draft, Pressure Sewer J – Whitney Avenue, Standard Operating Procedure § 1.0 (June 2014).

48. On information and belief, Defendant has failed to consistently implement the Whitney Avenue Pressure Sewer SOP. This omission constitutes a violation of the General Provisions "Proper operation and maintenance" and "Duty to mitigate."

49. On information and belief, Defendant does not have a routine cleaning and inspection program for large diameter pipes, such as the Whitney Avenue Pressure Sewer, as alleged in paragraph 39. This omission constitutes a violation of the General Provisions "Proper operation and maintenance" and "Duty to mitigate."

50. On information and belief, Defendant does not have a comprehensive H2S Program, as alleged in paragraph 40. The H2S Program inventory failed to include the Whitney Avenue Pressure Sewer, despite meeting the inventory criteria. Defendant does not have a standard protocol for incorporating newly discovered areas with hydrogen sulfide corrosion. This omission constitutes a violation of the General Provisions "Proper operation and maintenance" and "Duty to mitigate."

51. Defendant is in violation of its NPDES Permit for each day that it fails to properly implement the Whitney Avenue Pressure SOP, a routine cleaning and inspection program for large diameter pipes, and a comprehensive H2S program.

52. Based upon information and belief, Defendant's violations of the CWA are ongoing and continuous, and there is more than a reasonable likelihood of recurrence.

### THIRD CLAIM FOR RELIEF
### PUBLIC NUISANCE

53. Paragraphs 1 through 52 are incorporated herein by reference.

54. The Defendant, having caused or contributed to the discharge of untreated wastewater as alleged above, has created a public nuisance in that the addition of pollutants to Long Island Sound has offended, interfered with, or caused harm to the public in the exercise of common rights and in a manner such as to endanger the property, health, safety, or comfort of a

considerable number of persons, including their right to waters, lands, and an environment that are free from pollution.

55.    Certain members of Save the Sound have suffered a peculiar or special harm as a result of Defendant's conduct, including, but not limited to the inability to pursue recreational activities, such as boating or swimming, or subsistence fishing that are adversely affected by the addition of pollution to Long Island Sound.

56.    Without the issuance of an injunction, Defendant will continue to create and maintain a public nuisance, to the further injury of certain members of Save the Sound.

57.    Continuing commission of the acts and omissions alleged above irreparably harms the water of Long Island Sound and certain members of Save the Sound, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

58.    Wherefore, Plaintiff prays for relief as set forth below.

## **RELIEF SOUGHT**

Wherefore, Plaintiff respectfully requests that the Court grant the following relief:

a. Declare that the Defendant has violated and continues to be in violation of the Clean Water Act as alleged herein;

b. Enjoin the Defendant from discharging pollutants pursuant to Sections 505(a) and (d), 33 U.S.C. §§ 1365(a) and (d);

c. Enjoin the Defendant from further violations of the Clean Water Act;

d. Order Defendant to immediately comply fully with all applicable requirements of the NPDES Permit;

e. Order the Defendant to take all steps necessary to eliminate the discharge of pollutants from its Collection System, including, but not limited to: immediate and comprehensive

implementation of the Whitney Avenue Pressure Sewer SOP; completion of a full inventory of large diameter pipes; implementation of a prioritized ongoing condition assessment of large diameter pipe; development and implementation of a prioritized asset management and rehabilitation program; and revision, expansion and immediate implementation of the H2S Program;

f. Order Defendant to take appropriate actions to restore the quality of the waters impaired by its activities;

g. Order the Defendant to pay a civil penalty not to exceed $56,460 per day, per violation, for all violations of the CWA occurring after November 2, 2015 when penalties are assessed after December 23, 2020, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C § 1319(d), 1365(a), and 40 C.F.R §§ 19.1-19.4;

h. Award Plaintiff costs of litigation, including, reasonable attorney fees and expert witness fees pursuant to Section 505(d), 33 U.S.C. §1365(d); and

i. Award such other relief as the Court deems just and fair.

Dated this 10th day of February, 2021.

SAVE THE SOUND

By: */s/ Katherine M. Fiedler*
Katherine M. Fiedler, Esq.
Staff Attorney
Federal Bar #ct30709
Save the Sound
900 Chapel Street, Suite 2202
New Haven, CT 06510
Phone: (203) 787-0646 ext. 108
Fax: (203) 787-0246
Email: kfiedler@savethesound.org

                                                    Roger Reynolds, Esq.
Senior Legal Counsel
Federal Bar #ct18126
Save the Sound
900 Chapel Street, Suite 2202
New Haven, CT 06510
Phone: (203) 787-0646 ext. 105
Fax: (203) 787-0246
Email: rreynolds@savethesound.org

ITS ATTORNEYS